UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHANIE HUME, as Administrator of the
Estate of TIMOTHY HUME a/k/a
TIMOTHY JAMES HUME, Deceased,

                                      Plaintiff,

Case # 12-CV-6378-FPG

DECISION AND ORDER

v.

FARR'S COACH LINES, LIMITED, et al.,

                                      Defendants.
_____

## INTRODUCTION

This matter arises out of a motor vehicle accident occurring on July 22, 2011 in Junius, New York, during which a tour bus owned by Farr Coach Lines, Ltd. and driven by Mr. Rene Bisson, collided with a tractor-trailer on the New York State Thruway while traveling from Toronto, Ontario, to New York, New York. The driver of the tractor-trailer, Timothy Hume, was killed in the accident.

Plaintiff Stephanie Hume ("Hume"), as administrator of decedent Timothy Hume's estate, filed a Complaint against three Defendants: (1) Rene Bisson ("Bisson"); (2) Farr's Coach Lines, Ltd. ("Farr's"); and (3) London Life Insurance Company (who was later dismissed by stipulation). ECF Nos. 1, 33. The Amended Complaint in this action ("Am. Compl.") added four new defendants: Setra of North America, Inc. ("Setra"); Tarten Equipment Limited ("Tarten"); ZF Friedrichshafen AG ("ZF"); and Daimler Buses of North America, Ltd. ("DBNA, Ltd."). ECF No. 37.

Some of the Defendants filed a counterclaim against the Estate of Timothy Hume, who has in turn filed a cross-claim against, *inter alia*, DBNA, Ltd. ECF Nos. 18, 47, 50, 51.

Currently pending before the Court is a series of virtually identical motions by DBNA, Ltd., which all seek dismissal of the Amended Complaint and any cross-claims against it on the basis that this Court lacks jurisdiction over this matter, or, in the alternative, on the basis of *forum non conveniens*. ECF Nos. 52, 72, 82, 93, 101, 116, 198. DBNA, Ltd. has submitted numerous filings in support of its applications, including the Declaration of Steve Batho, President of Product Support for DBNA, Ltd., with appended exhibits ("Batho Decl."), ECF No. 52-1; a Memorandum of Law ("DBNA, Ltd. Mem."), ECF No. 52-2; a Reply Memorandum of Law ("DBNA, Ltd. Reply Mem."), ECF No. 141; a Supplemental Reply Memorandum of Law ("DBNA, Ltd. Supp. Mem."), ECF No. 198-1; and a Second Reply Memorandum as to third-party defendant Matrix ("DBNA, Ltd. 2nd Reply Mem."), ECF No. 204.

For the following reasons, DBNA, Ltd.'s Motions to Dismiss (ECF Nos. 52, 72, 82, 93, 101, 116, 198) are denied without prejudice, and may be renewed following jurisdictional discovery.

BACKGROUND[1]

The Amended Complaint filed by Hume alleges that DBNA, Ltd. was a foreign corporation incorporated in Canada, doing business within the State of New York, and that part

---

[1] The summary of the factual background is drawn from the pleadings and pertinent materials submitted in connection with the present Motions. In adjudicating the Motions, the Court is entitled to consider facts stated in the Amended Complaint or in documents attached to it as exhibits or incorporated in it by reference, *see Xin Wei Lin v. Chinese Staff & Workers' Ass'n*, 527 F. App'x 83, 85 (2d Cir. 2013), as well as "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003), *aff'd sub nom. Lentell v. Merrill Lynch Co.*, 396 F.3d 161 (2d Cir. 2005).

2

of DBNA, Ltd.'s regular business in the state included the selling and leasing of Setra brand buses, such as the one involved in the Junius accident ("the Subject Coach"). Am. Compl. ¶¶ 24, 26, 39.

Hume also alleges that DBNA, Ltd., regularly conducts substantial business in New York, where it had reason to know that Setra buses manufactured, inspected, sold, leased, and maintained by DBNA, Ltd. would be operated in New York; that Defendant Setra supplied the Subject Coach to Defendant DBNA, Ltd., which in turn sold the bus to Defendant Farr's; and that after accepting a meritorious warranty claim by Farr's, DBNA, Ltd. was negligent in failing to properly diagnose, repair, and completely remedy the problems, defect, and/or mechanical, electrical, or hydraulic problems with the transmission or related systems, thereby breaching its duty of care. *Id.*, ¶¶ 39, 43, 62.

The Amended Complaint further alleges that, after failing to fully remedy, repair, or replace the transmission and related systems in the Subject Coach, which is a 2008 Setra brand bus (the basis for the warranty claim), DBNA, Ltd. returned the bus to Farr's, representing that the bus was fully repaired and fit for regular operation over the roads. *Id.*, ¶ 63.

Hume further alleges that DBNA, Ltd., its agents, servants, and/or employees were negligent, reckless, and careless including, but not limited to: incorrectly or negligently repairing the bus; in allowing the bus to be used on the roadways of the general public when DBNA, Ltd. knew or should have known the vehicle was not safe for use; failing to properly and adequately oversee, train, and hire its employees; failing to warn of the existing conditions; violating the statutes and ordinances in the State of New York; allowing, causing, and/or permitting the bus and its components to be used without proper repair and without providing warning to all foreseeable persons using the vehicle; breaching express and implied warranties and

representations with respect to the repair of the vehicle and parts; and failing to provide a safe bus. *Id.* ¶ 66. The Plaintiff alleges that this conduct on behalf of DBNA, Ltd. caused injuries to, and the death of, Timothy Hume. *Id.*, ¶ 69.

Finally, the Amended Complaint alleges that DBNA, Ltd. placed into the stream of commerce the Subject Coach and its components which were defective, causing injury and death to Timothy Hume. *Id.*, ¶¶ 73, 76, 81, 82, 83.

Defendant DBNA, Ltd., is a Canadian corporation with a principal place of business in Mississauga, Ontario, Canada, and now seeks to dismiss all claims and cross-claims against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12 (b)(2). ECF Nos. 52, 72, 82, 93, 101, 116, 198.

## DISCUSSION

### I. Standard of Review

The Plaintiff carries the burden of establishing that this Court has personal jurisdiction over DBNA, Ltd. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994); *McQueen v. Huddleston*, 17 F. Supp. 3d 248, 250 (W.D.N.Y. 2014). Prior to discovery, a plaintiff satisfies this burden by "pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). At this stage, "the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." *Ball*, 902 F.2d at 197; *see also Weinar v. Lex*, No. 13 Civ. 1511 (DAB), 2014 WL 325698, at *2 (S.D.N.Y. Jan. 23, 2014). This showing may be made through affidavits and supporting materials "containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *S. New Eng. Tel. Co. v. Global NAPs*

4

*Inc.*, 624 F.3d 123, 138 (2d Cir. 2010); *see also AEP–PRI Inc. v. Galtronics Corp. Ltd.*, No. 12 Civ. 8981 (PAE), 2013 WL 4400833, at *4 (S.D.N.Y. Aug. 13, 2013).

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits—subject, of course, to certain constitutional limitations of due process." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). There are two types of personal jurisdiction: general and specific. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 n.9 (2d Cir. 2012). "General jurisdiction is authorized where the defendant's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, — U.S. —, 131 S. Ct. 2846, 2851 (2011)). This type of jurisdiction is codified in the New York Civil Practice Law and Rules ("C.P.L.R.") § 301. *Id.* "'Specific jurisdiction,' however, 'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear*, 131 S. Ct. at 2851). Jurisdiction of this type is permitted in New York under C.P.L.R. § 302(a). *Id.*

"[W]hen a plaintiff opposing a motion to dismiss contends that discovery on the issue of personal jurisdiction is necessary, the plaintiff need not make a *prima facie* showing of jurisdiction, but at the very least must make a sufficient start toward establishing jurisdiction by showing its position to be non-frivolous. To obtain jurisdictional discovery, the plaintiff need only demonstrate that facts may exist to exercise personal jurisdiction over the defendant. However, the court is within its discretion to deny jurisdictional discovery when little more exists than plaintiff's bare assertions that jurisdiction is proper." *Zoological Society of Buffalo, Inc. v. CarvedRock, LLC*, No. 10-CV-35-RJA-HKS, 2011 WL 6329929, at *3 (W.D.N.Y. Oct.

12, 2011) (Schroeder, M.J.), *adopted by* 2011 WL 6329872 (W.D.N.Y. Dec. 9, 2011) (Arcara, J.) (internal citations and quotations omitted).

Hume, Farr's, Bisson, ZF, and Matrix (referred to collectively as "the Opposing Parties" where appropriate) have all responded to DBNA, Ltd.'s Motion to Dismiss and, in sum and substance, advance the same arguments in support of a finding of jurisdiction, or alternatively, support the authorization of jurisdictional discovery.[2] Bisson Mem. at 2-12; Farr's Mem. at 3; Hume Mem. at 2-16; Hume Counterclaims Mem. at 4-15; ZF Mem. at 2-4; Matrix Mem. at 4 (incorporating Lenhard Aff.).

With regard to the jurisdictional inquiry, the Opposing Parties rely on C.P.L.R. § 301 and § 302 to establish jurisdiction over DBNA, Ltd. Bisson Mem. at 3-12 (§ 302); Hume Mem. at 5-14 (§ 302); Hume Counterclaims Mem. 4-15 (§§ 301, 302); ZF Mem. 2-5 (§ 302). The Court deals with each section in turn.

  A. <u>General Jurisdiction</u>

Section 301 provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Such general jurisdiction over foreign corporations exists when those corporations' "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) (per curiam) (quoting *Goodyear*, 131 S. Ct. at 2851).

---

[2] The submissions opposing DBNA, Ltd.'s Motion to Dismiss include: Memorandum of Law by Renee Bison ("Bisson Mem.") and Attorney Affidavit with appended exhibits ("Whritenour Aff."), ECF No. 96; Memorandum of Law by Farr's ("Farr's Mem."), ECF No. 118; Memorandum of Law by Stephanie Hume ("Hume Mem.") and Attorney Declaration with appended exhibits ("Polimeni Decl."), ECF Nos. 122-123; Memorandum of Law and Attorney Affirmation with appended exhibits by Stephanie Hume as Counterclaim Defendant ("Hume Counterclaims Mem." & "Lenhard Aff."), ECF Nos. 124 & 124-8; Memorandum of law by ZF ("ZF Mem."), ECF No. 135; and Memorandum of Law by Matrix ("Matrix Mem."), ECF No. 202-1.

The Supreme Court has recently clarified the standard for finding a corporation to be "essentially at home" in a foreign jurisdiction. In *Daimler AG v. Bauman*, ——U.S.——, 134 S. Ct. 746 (2014), the defendant was DaimlerChrysler Aktiengesellschaft ("Daimler"), the German company that manufactures Mercedes–Benz vehicles in Germany. *Id.* at 750–51. Daimler's indirect subsidiary, MBUSA, operated multiple facilities in California, was the largest supplier of luxury vehicles to the California market, and accounted for 2.4% of Daimler's worldwide sales. *Id.* at 752. These contacts, the Court held, were insufficient to establish general jurisdiction over Daimler. *Id.* The Court rejected plaintiffs' proposed test for general jurisdiction, namely, whether the corporation "engages in a substantial, continuous, and systematic course of business" and explained that, as a matter of course, a corporation is subject to general jurisdiction only in its formal place of incorporation or principal place of business. *Id.* Only in the "exceptional case" would a corporation's operations in another forum be "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19.

In this Circuit, a court may exercise personal jurisdiction over a subsidiary based on its jurisdiction over the parent company only when the subsidiary is an "alter ego" or "mere department" of the parent company. *See GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009). Under this form of vicarious jurisdiction, a subsidiary is a mere department of its parent corporation "[w]hen the activities of the parent show a disregard for the separate corporate existence of the subsidiary." *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). The Second Circuit has suggested, in light of *Daimler*, that the alter ego or mere department theory is still valid. *See Sonera Holdings B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) ("*Daimler* expressed doubts as

to the usefulness of an agency analysis . . . that focuses on a forum-state affiliate's importance to the defendant rather than on whether the affiliate is so dominated by the defendant as to be its alter ego."); *accord NYKCool A.B. v. Pacific Int'l Servs.*, 66 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) ("The [*Daimler*] Court did not express any doubt as to the soundness of an alter ego theory of jurisdiction"); *Paysys Intern. v. Atos, SE*, No. 14 Civ. 1010, 2015 WL 4533141 (S.D.N.Y. July 24, 2015) (applying "mere department" theory in post-*Daimler* jurisdictional analysis).

In this case, DBNA, Ltd. was incorporated and had its principal place of business in Canada. Hume argues that DBNA, Ltd. was a subsidiary or branch of a larger entity known as "Daimler Buses North America," which operated a facility in Oriskany, New York, under the name DBNA, Inc., a New York corporation. Lenhard Aff., ¶¶ 11-12. Hume therefore seeks to impute the jurisdiction that would arguably be appropriate over Daimler Buses North America, based on its contacts in New York to DBNA, Ltd., the Canadian company and Defendant in this matter. Hume Counterclaims Mem. at 6-7. Put another way, Hume argues that this Court has general jurisdiction over DBNA, Ltd., because it is a mere department or alter ego of the business group Daimler Buses North America, which has a presence in New York. *See generally, Volkswagenwerk AG*, 751 F.2d at 120 ("mere department" applies only if the parent company is subject to general jurisdiction in the forum).

Plaintiff Hume and third-party Plaintiff Matrix explain that "Daimler Buses North America" is comprised of two separate companies operating as a unified whole to distribute buses throughout North America. Lenhard Aff. ¶ 11. As of January 3, 2014, DBNA, Inc. was registered with the New York Department of State as a domestic corporation with Bernd Voigt as CEO. Lenhard Aff., Ex. A. Around the same time, the website of Daimler Buses North

America (www.dcbusna.com[3]) listed its headquarters as Greensboro, North Carolina and listed three North American facilities in Mississauga, Ontario; Oriskany, New York; and Greensboro, North Carolina. *Id.*, Ex. B. According to the same website, Daimler Buses North America's CEO was Richard Ferguson, and Bernd Voigt was Executive VP of Engineering. *Id.* The website pages submitted by Hume draw no distinction between DBNA, Ltd. and DBNA, Inc., and do not mention the individual companies by their respective names. *Id.* Likewise, a 2007 Corporate Fact Sheet from "Daimler Chrysler Commercial Buses North America" lists North American production facilities in the Canadian province of Ontario and within the states of New York and North Carolina. Whritenour Aff., Ex. C.

The Batho Declaration, submitted by DBNA, Ltd. in support of dismissal, indicates, *inter alia*, that: Daimler Buses North America Ltd. is a Canadian corporation with a principal place of business in Mississauga, Ontario, Canada; it does not maintain offices in the State of New York; it does not have an authorized agent for service of process; and does not own New York bank accounts or real estate. Batho Decl. ¶¶ 2-5. The Declaration further states that DBNA, Ltd. imports Setra coaches from Setra North America, Inc. (a Maine corporation with principal place of business in North Carolina) to sell to Canadian companies. DBNA, Ltd. does not sell Setra coaches to companies in the United States, including New York. *Id.* ¶¶ 7-8. Significantly, Batho's Declaration does not mention DBNA, Inc. or its alleged parent company, Daimler Buses North America. There is no indication from DBNA, Ltd. in its Motion papers how the three companies interact, leaving unanswered questions as to the nature of the relationship between them.

In its Reply Memorandum, DBNA, Ltd. states that "Daimler Buses North America" and "Daimler Buses" are general terms or trade names used for promotional purposes. It suggests,

---

[3] This website is no longer in existence.

without elaboration, that DBNA, Inc. is a "corporate relative" of DBNA, Ltd. DBNA, Ltd. Reply Mem. at 5. In a Second Reply Memorandum directed at Matrix, DBNA, Ltd. refers to DBNA, Inc., the New York corporation, as DBNA, Ltd.'s "parent," and goes on to state that there is no such entity as Daimler Buses North America, and that "Matrix simply made it up." DBNA, Ltd. 2nd Reply Mem. at 3. Further complicating the matter is the fluidity of DBNA, Ltd.'s corporate history. The various changes in Daimler Buses corporate structures that have taken place since the time of the Junius accident have not been documented by DBNA, Ltd. in its moving papers. As Hume points out, the Batho Declaration, ECF No. 52-1, was written in the present tense at the time of its submission and therefore does not speak to the relevant time frame, which is the date of the collision that is the subject of this action. Hume Mem. at 4; Hume Counterclaims Mem. at 14-15.

Although DBNA, Ltd. relies on the holding in *Daimler AG* for the proposition that it is not "at home" in this State because it is incorporated in Canada, it ignores that New York's alter ego theory of general jurisdiction has arguably survived that holding. DBNA, Ltd. Supp. Mem. at 6-8. In any event, the Opposing Parties seek jurisdiction over DBNA, Ltd., based on the contacts of its alleged parent company, whereas in *Daimler AG*, plaintiffs sought jurisdiction over the parent corporation based on the activities and contacts of its subsidiary. 134 S.Ct. at 760. Although the Court cannot decide the issue at this juncture, it notes that the Supreme Court explicitly contemplated the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761, n.19.

The Opposing Parties have raised factual questions as to the common ownership and/or management of the U.S. and Canadian companies and have demonstrated that the two business

units are virtually indistinguishable, from a marketing standpoint, under the larger entity (or parent company), of Daimler Buses North America. *See Volkswagenwerk AG,* 751 F.2d at 120–22 (articulating four factors for courts to consider in determining alter ego jurisdiction, including nearly identical ownership interests, financial dependency of the subsidiary on the parent company, and degree of control over marketing and operational policies by the parent company over the subsidiary). As such, the interconnection, if any, between Daimler Buses North America, DBNA, Ltd., and DBNA, Inc. remains unresolved. Jurisdictional discovery is therefore warranted to determine whether the "mere department" or "alter ego" theory of jurisdiction is satisfied in this case.

B. <u>Specific Jurisdiction</u>

The Court also cannot determine if there is specific jurisdiction over DBNA, Ltd., and finds that limited jurisdictional discovery is appropriate to determine if Hume has met her burden in this regard.

C.P.L.R. § 302(a) provides, in pertinent part, that a court may exercise jurisdiction over any non-domiciliary who: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from

interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state. C.P.L.R. § 302(a)(1)-(4).

The Opposing Parties aver that, under the following facts, DBNA, Ltd. either transacted business within the State of New York or committed a tortious act outside the State causing injury within the State. Bisson Mem. at 3-12; Hume Mem. at 5-14; Hume Counterclaims Mem. at 4-15; ZF Mem. at 2-5.

First, Hume asserts that DBNA, Ltd. was formerly known as Orion Bus Industries, Ltd., and changed its name in 2000. Orion had assembly plants in Mississauga, Canada and Oriskany, New York. Polimeni Decl. ¶¶ 9, 12. It is unclear from the parties' submissions how the corporate structure evolved thereafter and whether, upon changing names, DBNA, Ltd. retained the assembly plant in New York. As discussed earlier, there is some indication that either DBNA, Ltd.'s alleged parent company or its domestic affiliate, DBNA, Inc., continued to operate the Oriskany, New York facility.

Second, the Opposing Parties assert that in light of Farr's business location in Dunnville, Ontario, which is approximately 47 miles from the U.S. border, and Farr's regular course of business of transporting travelers to and from Canada and the State of New York, DBNA, Ltd. actually knew or should have known that the purchaser, Farr's, would operate the imported Setra coaches over New York roadways. Bisson Mem. at 5-6; Hume Mem. at 13-14; Hume Counterclaims Mem. at 10-14.

What is known is that the Subject Coach was manufactured by Setra, also a Daimler company, which is incorporated in Maine with a principal place of business in North Carolina. Batho Decl. ¶ 7 & Ex. A. The Setra warranty policy indicates that the Subject Coach would be warrantied by Setra of North America, Inc., excluding the engine and transmission. *Id.*, Ex. B.

Yet the five-year extended warranty on the transmission, as referenced in the Agreement to Purchase, is not present in any of DBNA, Ltd.'s exhibits, so there is no way of knowing who issued the warranty, or where the issuer was located and/or was doing business. Batho Decl., Exs. A & B.

DBNA, Ltd. also maintains that it is a Canadian corporation with a principal place of business in Mississauga, Ontario. It does not maintain offices, is not qualified, licensed, or authorized to do business in New York, does not have an agent in New York, and does not own New York bank accounts or real estate. Batho Decl. ¶¶ 2-5. According to DBNA, Ltd., it merely imports Setra coaches from Setra of North America, Inc. for sale to Canadian companies. At the time of the incident, Farr's Coach was owned and operated by a Canadian company, driven and operated by a Canadian citizen, and carrying 52 passengers, all of whom were Canadian. As such, DBNA, Ltd. would have no particular reason to expect that the Farr's Coach would be operated in the State of New York. DBNA, Ltd. Mem at 2-3, 9.

With regard to any purported business transaction, DBNA, Ltd., provides sales agreements indicating that the Subject Coach was sold by Setra of North America, Inc, to DBNA, Ltd. on September 10, 2008, and delivered to Mississauga, Ontario. Batho Decl., Ex. A. DBNA, Ltd., in turn, sold the Subject Coach to Farr's Coach Lines, Ltd. on September 4, 2008. *Id.*, Ex. B.[4] The Batho Declaration does not state whether Daimler Buses or Orion sold or provided any buses other than Setra coaches or parts, or did any other business with any entities or individuals in New York at the time of the Junius, New York accident. Batho Decl. ¶¶ 1-13.

Courts in this district have previously addressed whether a defendant conducted business in New York when he was not physically located within the State. In *Iovate Health Sciences,*

---

[4] As Bisson points out, the Agreement to Purchase between DBNA, Ltd., and Farr's inexplicably pre-dates the Agreement to Purchase between Setra and DBNA, Ltd. Whritenour Aff. ¶ 10; Batho Decl., Exs. A & B.

13

*Inc. v. Masuda*, No. 08-CV-809A, 2009 WL 2878526 (W.D.N.Y. Sept. 2, 2009), several Canadian plaintiff companies sought jurisdiction over a Washington State defendant who traded dietary supplements online and whose supplements were found in New York retail store. Plaintiffs alleged that defendant was transacting business within the state pursuant to § 302(a)(1) and had committed a tortious act outside New York causing injury inside New York pursuant to § 302(a)(3). The defendant moved for dismissal on the lack of jurisdiction on the grounds that: (1) his sole proprietorship was registered in Chewelah, Washington and all business activities were conducted in Washington state; (2) he distributed supplements to health food stores and wholesale distributors and had no accounts in New York; (3) he was not registered to do business, owned no property or bank accounts, and had no agents in New York, and (4) no advertising was conducted in New York. *Iovate*, 2009 WL 2878526, at *2.

The Court found that jurisdictional discovery was warranted because jurisdiction could be found over an out-of-state distributor who sells products to a retailer doing business in New York under an agency theory, and that questions existed as to whether that defendant, who denied knowledge as to whether his products were being sold in New York stores, "exercised some control over [the agent] in the matter." *Id.* at *3 (citing *Violet v. Picillo*, 613 F. Supp. 1563, 1576 (D.R.I. 1985) (Interstate distributors and manufacturers place their products into the stream of commerce with either the subjective intention, or objective reason to know, that their products will be sold to a nationwide market, that is, in any or all states. The fact that these manufacturers or distributors place their products in a stream of commerce destined for sale through a broad interstate market, and reap the attendant benefits, renders them properly subject to suit in one of the states comprising that market.) (quoting *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 36 (2d Cir. 2001) (holding plaintiff must show

that the purported agent "engaged in purposeful activities in New York in relation to his transaction for the benefit of and with the knowledge and consent")). *Iovate*, 2009 WL 2878526, at *2.

Here, DBNA, Ltd. is alleged to have sold, inspected, leased, and/or serviced Setra buses that would be regularly operated in the State of New York. *But see, Swift Transp. Co. of AZ, LLC v. RTL Enterprises, LLC*, No. 14-cv-902, 2015 WL 457641 (N.D.N.Y. Feb. 3, 2015) (Delaware transportation company did not purposely avail itself of New York forum where its only contact with the State was when trucks leaked asbestos from trailers while parked in New York). It is also alleged that DBNA, Ltd. has contacts within New York through Setra of North America, Inc. (the coach manufacturer), DBNA, Inc. (the domestic affiliate), or Daimler Buses North America (the business group encompassing the former Orion Buses), all of which may give rise to an agency relationship. Discovery therefore is necessary to determine whether DBNA, Ltd. had a reason to expect that its tortious activity in Canada would have a direct consequence in New York when, *inter alia*, it sold the Subject Coach to Farr's. *See Iovate*, 2009 WL 2878526, at *4.

In summary, DBNA, Ltd.'s New York contacts and the inter-connection between the Daimler companies are currently unknown, and discovery is necessary to determine whether DBNA, Ltd. transacted business or satisfied the other alternatives set forth in C.P.L.R. § 302(a) to support personal jurisdiction. The Opposing Parties' request for jurisdictional discovery is therefore granted. *See* Bisson Mem. at 11-12; Farr's Mem. at 3; Hume Mem. at 15-16.

C. <u>Due Process</u>

Construing the pleadings and affidavits in the light most favorable to the Plaintiff, and resolving all doubts in the Plaintiff's favor as the Court must, even if the Court were to find that

either § 302(a)(1) or § 302(a)(3) were satisfied, the Court would still have to determine whether jurisdiction over DBNA, Ltd. comports with federal due process. In this regard, even if jurisdiction is appropriate under the laws of the forum state, "the court must decide whether such exercise comports with the requisites of due process." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Under the Due Process Clause of the United States Constitution, an inquiry regarding personal jurisdiction has two parts: the minimum contacts inquiry and a reasonableness inquiry. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008). The necessary minimum contacts may exist through either specific or general jurisdiction. Here, however, DBNA, Ltd. has not acknowledged any relationship between the business units of DBNA, Ltd. and DBNA, Inc., and has further denied knowledge that the imported Setra coaches were being operated in New York by Farr's. Discovery, therefore, is also warranted as to DBNA, Ltd.'s contacts with New York.

D.  *Forum Non Conveniens*

DBNA, Ltd. alternatively moves to dismiss the action on the basis of *forum non conveniens*. DBNA, Ltd. Mem. at 15-22. These applications are denied without prejudice, as the Court declines to address this issue until jurisdictional discovery has concluded.

CONCLUSION

DBNA, Ltd.'s Motions to Dismiss, ECF Nos. 52, 72, 82, 93, 101, 116, 198 are DENIED WITHOUT PREJUDICE to renew following jurisdictional discovery.

The Opposing Parties may conduct limited jurisdictional discovery as to: (1) the inter-relationships, if any, between DBNA, Ltd., DBNA, Inc., Daimler Buses North America, and Setra of North America, Inc.; (2) the corporate structure of DBNA, Ltd. during the relevant time

frame, which may have included the brands of Orion Transit Buses and Setra Motor Coaches; (3) whether DBNA, Ltd. knew of its connections to coaches which were to be sold, supplied, and/or used in the State of New York; (4) the nature and extent of the five-year extended warranty on the Subject Coach issued by DBNA, Ltd.

    IT IS SO ORDERED.

DATED:    September 30, 2015
                Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            Chief Judge
                                            United States District Court