UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEPHANIE HUME, *as Administratix of the Estate of*
TIMOTHY HUME a/k/a TIMOTHY JAMES HUME,
*Deceased*,

                     Plaintiff,

v.

FARR'S COACH LINES LIMITED, et al.,

                     Defendants.

Case # 12-CV-6378-FPG

DECISION AND ORDER

FARR'S COACH LINES LIMITED and RENE BISSON,

                     Third-Party Plaintiffs,

v.

MATRIX EXPEDITED SERVICE, LLC,

                       Third-Party Defendant.

**INTRODUCTION**

On July 22, 2011, a bus operated by Defendant/Third-Party Plaintiff Rene Bisson was struck from the rear by a tractor-trailer operated by Timothy Hume ("Hume"); Hume was killed in the collision. Plaintiff Stephanie Hume ("Plaintiff"), acting in her capacity as the Administratrix of Hume's estate, brought this action against Bisson, his employer, Farr's Coach Lines Limited ("FCLL"), and FCLL's insurer, London Life Insurance Company, alleging that Bisson operated the bus negligently and seeking to recover damages for Hume's injuries. ECF No. 1. Bisson asserted a counterclaim against Plaintiff for the injuries he sustained in the accident, and also filed a third-party complaint against Third-Party Defendant Matrix Expedited Service, LLC, Hume's

1

employer (Plaintiff and Matrix are referred to collectively as the "Hume Parties"). ECF Nos. 18, 51, 54. Presently before the Court is Bisson's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 314. For the reasons that follow, Bisson's Motion for Summary Judgment is DENIED.

## BACKGROUND

### I. Facts

On July 22, 2011, Bisson, an employee of FCLL, was operating a Setra motor coach (the "bus") eastbound on State Route 90 (the "thruway") in Junius, New York. ECF No. 317 at ¶ 2. Bisson testified at deposition that, shortly before the accident, he experienced mechanical issues with the bus and therefore he pulled over to the shoulder of the thruway. *Id*. at ¶ 3. Specifically, Bisson testified that a warning light related to the bus's anti-pollution controls came on and that he pulled the bus over to manually reengage the system. ECF No. 314-9 at 50-54. The parties dispute whether it was necessary for Bisson to pull over to the shoulder to reengage the system, or whether he could have used an "engine override button" that would have permitted him to drive the bus to the next rest area. *See* ECF No. 321 at ¶ 3.

The parties further dispute the events immediately leading up to the accident. Bisson initially told the New York State Police that after he reengaged the anti-pollution controls, he engaged the bus's transmission, safely re-entered the roadway with his four-way flashers engaged, and traveled for approximately two miles, reaching a speed of approximately 60 miles per hour, when Hume's tractor-trailer rear-ended his bus. ECF No. 314-11 at 17. However, State Police interviewed Bisson a second time after they examined the scene. *Id*. at 19. Bisson became "visibly upset," started to cry, and claimed that he was confused when he made his earlier statement. *Id*. Bisson then told the State Police that as the bus was reentering the thruway, he experienced a

problem with the transmission. *Id*. Bisson also told the State Police that the bus traveled only "a couple of hundred feet" before the collision and that it was traveling only 20 to 25 miles per hour. *Id*. Bisson told the State Police that he was "trying to move the bus back onto the shoulder" when it was hit from behind. *Id*.

At his deposition, Bisson further described the moments leading up to the accident. He testified that a transmission light came on halfway through the process of manually reengaging the anti-pollution controls. ECF No. 314-9 at 59. Bisson also testified that the bus had not completely reentered the right driving lane when the collision occurred. *Id*. at 77.

Robert Moss, a third-party eyewitness, was traveling eastbound on the thruway at the time of collision. Moss testified at deposition that he saw the bus on the shoulder of the thruway, and he moved his vehicle from the right lane into the left lane. ECF No. 314-10 at 43. According to Moss, the bus was completely on the shoulder when he first saw it and it had its four-way flashers engaged. *Id*. at 44. Moss also testified that he saw a white truck pull up beside him, and that he "eased back off" to make room for the truck to move into the left lane, but the truck continued traveling in the right lane. *Id*. at 45. Moss stated that "by then, the bus had come off the shoulder" and the truck ran into the back of it. *Id*. Moss testified that he was traveling approximately 60 miles per hour, that the collision occurred approximately 50 feet in front of him, and that the white truck could have pulled in front of him into the left lane of travel. *Id*. at 49. Contrary to Bisson's testimony, Moss stated that the bus was completely in the right lane of travel when the collision occurred. *Id*. at 51. According to Moss, he witnessed the bus move from being completely in the shoulder to being completely in the driving lane. *Id*.

Bisson's deposition testimony contradicted Moss's testimony in some relevant regards. In particular, and contrary to Moss's claim that there was room for Hume to move his tractor-trailer

3

into the left lane in front of Moss, Bisson testified that Moss's vehicle was parallel to or just passing the bus at the time of the impact. ECF No. 314-9 at 116. Moreover, and as noted above, Bisson testified that the bus was not fully in the right lane at the time of the collision. *Id.* at 77. Numerous passengers on the bus also testified that the bus was partially in the right lane and partially on the shoulder when the accident occurred. ECF No. 321 at ¶ 8.

The State Police issued a collision report after they investigated this accident. The State Police concluded that "[d]river inattention on the part of the operator of the tractor-trailer," along with a failure of "the operator of the coach" to "yield[] to on-coming traffic before entering the roadway" were "[c]ontributing factors to the cause and severity of the collision." ECF No. 314-11 at 132.

In connection with this action, the Hume Parties engaged an accident reconstruction expert, Michael DiTallo. In his expert report, DiTallo opines that when Bisson's bus re-entered the thruway, Hume had as little as 2.3-3.3 seconds to react, where the average perception and response time is 2.7 seconds. ECF No. 321-1 at 1582-83. DiTallo further opines that the collision was unavoidable for Hume and that Bisson caused the collision by entering the right lane of travel at a slow speed while oncoming traffic was approaching from the rear. *Id*. at 1583.

## II. Procedural History

On September 26, 2012, Bisson and his wife commenced an action in this Court (Case No. 12-CV-6518) (the "Bisson Action") asserting claims against the Hume Parties, Setra of North America, Inc., Daimler Buses of North America, Inc., and Tarten Equipment Limited. On October 3, 2012, a related action (Case No. 12-CV-6538) (the "St. Paul Action") was commenced by St. Paul Fire and Marine Insurance Company, as subrogee of FCLL, asserting claims against the

4

Hume Parties. Plaintiff commenced this action on July 13, 2013, asserting claims against Bisson, FCLL, and London Life Insurance. ECF No. 1.

This action and the Bisson Action were consolidated for all purposes on January 10, 2013. *See* Case No. 12-CV-6518-FPG-JWF, ECF No. 50. This action and the St. Paul Action were consolidated solely for purposes of discovery on January 23, 2013. ECF No. 29. London Life Insurance was dismissed from the matter by stipulation on February 14, 2013. ECF Nos. 32, 33.

On July 19, 2013, with the Court's permission, Plaintiff filed an amended complaint asserting claims against FCLL, Bisson, Setra, Daimler, Tarten, and ZF Friedrichschafen AG ("ZF"). ECF No. 37. On October 4, 2013, FCCL, Bisson, and Bisson's wife filed a Third-Party Complaint against Matrix. ECF No. 54.

Several motions to dismiss for lack of jurisdiction were filed (*see* ECF Nos., 52, 72, 82, 93, 191, 116, 198), and on September 30, 2015, the Court denied the motions without prejudice and permitted limited jurisdictional discovery. ECF No. 235. The parties conducted such discovery and on November 3, 2016, the Court denied Daimler's renewed motion to dismiss for lack of jurisdiction and granted Tarten's renewed motion to dismiss for lack of personal jurisdiction as to all claims except the cross-claims asserted against Tarten by ZF. ECF No. 305. Setra, Daimler, and ZF were later dismissed from the action by stipulation (*see* ECF Nos. 306, 307), leaving the claims between FCCL, Bisson, Plaintiff, and Matrix as the only pending claims.

On February 28, 2017, Bisson filed this motion for summary judgment, which asserts that he established liability as a matter of law with respect to his claims against the Hume Parties. ECF No. 314. On December 1, 2017, Matrix filed a motion for leave to file an amended answer and to file a summary judgment motion out of time. ECF No. 331. Matrix's motion is currently

pending before United States Magistrate Judge Jonathan W. Feldman, with oral argument scheduled for February 6, 2018. ECF Nos. 332, 334, 339.

## DISCUSSION

I. **Applicable Law and Legal Standards**

    A. **Summary Judgment**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Sousa v. Roque*, 578 F.3d 164, 169 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id*. The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56).

    B. **New York Law Regarding Rear-End Collisions**

The Court's jurisdiction in this matter is based on the parties' diversity of citizenship and therefore New York substantive law applies. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) ("It is a long-recognized principle that federal courts sitting in diversity apply state substantive law and federal procedural law.") (internal quotation omitted). "Under New York law, a rear-end collision establishes a *prima facie* case of liability against the rear vehicle and imposes a duty of explanation on the operator of that vehicle." *Krynski v. Chase*,

707 F. Supp. 2d 318, 322 (E.D.N.Y. 2009) (internal quotation omitted). This presumption of liability "arises from both common law principles and New York's Vehicle and Traffic Law, both of which establish that any driver approaching another automobile from the rear is bound to maintain a reasonably safe rate of speed and control over his or her vehicle, and to exercise reasonable care to avoid colliding with the other vehicle." *Id.* (internal quotation omitted). On a motion for summary judgment, the rear vehicle operator must rebut the presumption of negligence and, if he cannot do so, "the [operator of the forward vehicle] may properly be awarded judgment as a matter of law." *Id.* (quoting *Barile v. Lazzarini*, 222 A.D.2d 635, 636 (2d Dep't 1995)). "A defendant can overcome the presumption of negligence by providing a non-negligent explanation for the collision," which may include "mechanical failure, unavoidable skidding on wet pavement, a sudden stop of the vehicle ahead, or any other reasonable cause." *Id.* (internal quotation omitted); *see also Kavulak v. Laimis Juodzevicius, A.V. Inc.,* 994 F. Supp. 2d 337, 348 (W.D.N.Y. 2014) (noting that "a *prima facie* case of negligence merely shifts the burden to the operator of the rearmost vehicle").

## II. Genuine Issues of Material Fact Preclude Granting Bisson Summary Judgment

Bisson seeks summary judgment as to liability against the Hume Parties on the basis that the rebuttable presumption of negligence applies in this case and has not been rebutted. The Hume Parties contend that the rebuttable presumption does not apply under the facts of this case and that, in any event, they have proffered a non-negligent explanation for the collision.

The Court is not persuaded that the rebuttable presumption of negligence does not apply to this case. The Hume Parties contend that the circumstances of this case are unusual and that "[t]he subject accident is not a standard rear-end collision." ECF No. 321-2 at 11. In particular, the Hume Parties point to evidence that (1) the bus was traveling between 20-25 miles per hour in a

7

65 mile per hour zone; (2) the bus was potentially straddling the right lane of travel and the shoulder; and (3) the collision did not occur in stop-and-go traffic or during daylight hours in support of their contention that this accident was "unique" and that the rebuttable presumption therefore does not apply. *See id*. at 11-12. However, the relevant case law does not suggest that any of these factors, alone or in combination, prevent application of the rebuttable presumption. To the contrary, the *Krynski* court expressly acknowledged that the rebuttable presumption applies both to vehicles moving at normal speed and to vehicles traveling slowly or in stop-and-go traffic. *See Krynski,* 707 F. Supp. 2d. at 323. While a lack of visibility or unpredictable action by the driver of the lead vehicle are certainly factors to consider in determining whether a *prima facie* case of negligence has been rebutted, they do not, by themselves, render the presumption inapplicable.

The Court finds, however, that the Hume Parties proffered a non-negligent explanation for the collision and that a reasonable jury could credit this explanation. Specifically, a reasonable jury could find that, immediately before the collision, Bisson suddenly and unexpectedly moved the bus from the shoulder of the thruway into the right lane, and that Hume, who had only seconds to respond, was blocked from moving his tractor-trailer into the left lane by Moss's vehicle. The evidence supporting this view is recounted above and includes (1) Bisson's testimony that Moss's vehicle was parallel to or just passing the bus when the collision occurred; (2) Moss's testimony that the bus was completely on the shoulder of the road when he first saw it and had moved into the right lane immediately before the collision; (3) the testimony of various bus passengers that the bus had not fully re-entered the right lane when the collision occurred, and (4) DiTallo's expert report.

If a jury found that Hume was confronted with an emergency situation when the bus suddenly pulled into the right lane in front of him, it would be justified in finding that the presumption of negligence had been rebutted. "Under New York law, when an individual is confronted by a sudden emergency that he or she has not caused, that person is not held to the same accuracy of judgment or degree of care that would be required under ordinary circumstances." *Covey v. Simonton*, 481 F. Supp. 2d 224, 233 (E.D.N.Y. 2007) (finding issues of fact precluding summary judgment where a driver rear-ended another vehicle after moving his vehicle to avoid a mattress in the road). An unexpected condition, including a sudden and unsafe lane change, is sufficient to rebut the presumption of negligence in a rear-end collision. *See, e.g., Ortiz v. Hub Truck Rental Corp.,* 82 A.D.3d 725, 726 (2d Dep't 2011) ("[E]vidence that a plaintiff's vehicle made a sudden lane change directly in front of a defendant's vehicle, forcing that defendant to stop suddenly, is sufficient to rebut the inference of negligence."); *Fajardo v. City of New York*, 95 A.D.3d 820, 821 (2d Dep't 2012) ("A nonnegligent explanation [for a rear-end collision] may include that a plaintiff made a sudden lane change in front of a defendant's vehicle"); *see also Martin v. Beight*, No. 13-CV-855A, 2015 WL 1956506, at *6 (W.D.N.Y. Apr. 29, 2015) (noting that the presumption of negligence is rebutted in cases of "collisions resulting from lane changes").

Bisson takes issue with certain portions of DiTallo's expert report, contending that his calculations are "self-serving" because they assume that Hume could not have seen the bus before it attempted to pull back onto the highway, and that he improperly failed to consider evidence that Hume could have taken other evasive measures to avoid the collision. ECF No. 323 at 5. It is well-established, however, that "[a]rguments about the assumptions and data underlying an expert's testimony go to the weight, rather than the admissibility, of that testimony." *Arista*

9

*Records LLC v. Lime Grp. LLC,* No. 06 CV5936KMW, 2011 WL 1674796, at *7 (S.D.N.Y. May 2, 2011). On cross-examination, Bisson's counsel can question DiTallo regarding the assumptions he made to reach his conclusions. Indeed, the Supreme Court has expressly noted that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking" evidence that is based on questionable assumptions. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). Ultimately, the weight to be given to DiTallo's opinions is a question for the trier of fact and is not amenable to disposition on a summary judgment motion.

"Because every inference is construed in favor of the non-moving party, [the Hume Parties have] raised a genuine issue of material fact as to whether [Hume's] actions were reasonable and prudent under the circumstances." *Altman v. Bayliss*, No. 95-CV-0734E, 1999 WL 782338, at *2 (W.D.N.Y. Sept. 30, 1999) (denying summary judgment in a rear-end collision where the forward vehicle stopped in the roadway after it was hit by a vehicle driven by drunk driver who crossed the raised median). Accordingly, the Court finds that Bisson failed to establish his entitlement to summary judgment and that his motion must be denied.

## CONCLUSION

Bisson's Motion for Summary Judgment (ECF No. 314) is DENIED.

IT IS SO ORDERED.

Dated: February 5, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court